IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANK KRASTMAN,                     CIVIL DIVISION

       Plaintiff,                        Case No.

    v.

K&L GATES LLP,

    Defendant.

**COMPLAINT AND JURY DEMAND**

A.     *Preliminary Statement*

1.     The plaintiff Frank Krastman brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.     *Jurisdiction*

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.     On or about August 22, 2019 the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2019-00836. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.     The EEOC issued a Notice of Right to Sue dated December 4, 2019 (however, the date on the notice incorrectly identified the date of mailing as November 4, 2019).

5.	The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C.	*The parties*

6.	The plaintiff Frank Krastman is an adult individual who resides at 1100 Liberty Avenue, Apartment 603, Pittsburgh, PA 15222 (Allegheny County).

7.	The defendant, K&L Gates LLP ("K&L"), is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 210 Sixth Avenue, Pittsburgh, PA 15222 (Allegheny County).

8.	At all times material, the defendant employed more than fifteen employees.

9.	The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D.	*Factual Background*

10.	The plaintiff was hired by K&L on August 8, 2016 as a CRM Data Steward and was promoted to CRM Specialist in July 2017. He remained in that position until March 4, 2019 when his employment was terminated.

11.	K&L is a law firm, based in Pittsburgh, PA.

12.	The plaintiff's duties as CRM Specialist included insuring data quality of information in the firm's Client Relationship Management database, preparing email communications associated with business development and lead generation, training lawyers how to use the CRM system to garner leads and to train business development staff on how to use the CRM.

13.	The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, in

approximately June 2018, he was diagnosed with Generalized Anxiety Disorder and Attention Deficit/Hyperactivity Disorder, mental impairments that substantially limit one or more of the major life activities of the plaintiff.

14. During his employment, the plaintiff was able to perform all of the essential functions of his job, either with no accommodations or with reasonable accommodations.

15. The plaintiff first disclosed his disability to his manager, Eileen Kinney Mallin (then Associate Director of Marketing), in early November 2018.

16. The plaintiff told Mallin that his disability was aggravated because of the noise in the office work environment; he told her that he was having trouble concentrating and was being distracted. He raised the option of being supplied with a laptop and being permitted to work from home from time to time. (The plaintiff lives in an apartment in Pittsburgh and was a short walk from K&L's office in the event that he was needed in the office). The nature of the plaintiff's work duties made such an option viable; he could perform all the essential functions of his job from home, including his training duties.

17. Mallin printed out a form, "Medical Inquiry Form in Response to an Accommodation Request", and told the plaintiff to have his physician identify the accommodations that were needed.

18. The plaintiff provided the form to Britney Scolieri, DNP, CRNP. She filled it out and sent it back to the plaintiff on November 7, 2018. He, in turn, provided the completed form to Mallin. In the report, Scolieri wrote that the plaintiff "is easily distracted by his environment and has difficulty concentrating/completing tasks on a timely basis as a result" and recommended that he be permitted to "work from home environment alone" and to "limit stimuli in his environment that will distract him".

19. On November 8, 2018, the Human Resources Department was engaged to discuss the plaintiff's requested accommodations. The plaintiff spoke with Chris Wilson (Associate Director of Human Resources) about working from home. Wilson initially expressed the opinion that working from home was a possibility and that he would discuss that with Mallin.

20. Later that day, Wilson told the plaintiff that he talked to Mallin about his request for a laptop and to work from home and that she had rejected it. Wilson said that Mallin told him that she felt that the plaintiff "would not listen to her" if he was permitted to work from home.

21. On approximately November 13, 2018, just days after the plaintiff disclosed his disability, Mallin, sent him an email telling him that he was limited to working 39.5 hours per week and that he needed to get prior approval if he needed or wanted to work overtime. The plaintiff was a non-exempt employee, paid by the hour, and regularly worked 43 or more hours each week. Prior to disclosing his disability, the plaintiff did not have to request permission to work overtime. Further, similarly situated employees were not required to get prior approval to work overtime if the needs of their job required it.

22. The next day – November 14, 2018 – the plaintiff had a discussion with Mallin about his newly restricted work schedule. He told her that his job requires him to work more than 40 hours each week due to the many requests and job tasks that he received each day. Mallin said that the marketing coordinators could get their work done in 37.5 hours and without requiring overtime work, so the plaintiff should be able to do the same. The plaintiff pointed out that his work tasks and work demands were very different than the marketing coordinators; however, Mallin did not accept this and insisted that he should be able to get everything done without overtime.

23. On or about November 15, 2018 the plaintiff received a performance review, done by Mallin, indicating that he "needs improvement". This was the first time in his tenure that he received a negative work review.

24. In December 2018, the plaintiff again requested that he be able to work from home on a part time basis. This request was again denied. Mallin told the plaintiff that she was concerned that other employees would want to work from home if she granted his request. However, other similarly situated employees without disabilities were permitted to work from home. Further, the plaintiff's request was a request for an accommodation related to his disability, not merely for his convenience.

25. In early January, the plaintiff was provided with noise-reducing earphones to wear while at work. Although this helped somewhat, it did not eliminate all of the distracting sounds. Further, the earphones did not address or remediate the other types of distractions present in his work environment.

26. In mid- to late-January 2019, the plaintiff met with Mallin and Wilson regarding his work performance review. Mallin expressed her "concerns" regarding the plaintiff's work and productivity. Her complaints about the plaintiff's work were directed at the disability-related issues and it seemed that she was seizing on these issues while refusing to provide the reasonable accommodations that would enable him to perform the essential functions of his job. She instructed him to start providing her with reports detailing everything that he did each day and to provide them to her on a daily basis. This was an onerous request, because in any given day, the plaintiff was required to and did perform dozens of work activities; creating a daily report was burdensome and time consuming. Wilson indicated that he did not think that was

necessary; however, Mallin insisted.  Similarly situated employees were not required to prepare daily work reports.

27.     The daily work goals set by Mallin were very difficult – if not impossible – for the plaintiff to meet.  The plaintiff was under constant pressure to get more work done during the day, especially since she would not permit him to work the overtime hours necessary to get everything done.  In fact, between November 2018 and March, the plaintiff worked approximately 64 hours "off the clock" in order to try to keep up with his work demands.

28.     On March 4, 2019, the plaintiff's employment was terminated for "falsifying" information in one of the daily work reports that he had submitted; i.e., that he had overstated the number tasks that he had completed on a particular day.

29.     The plaintiff was subjected to heightened scrutiny after he disclosed his disability to his manager and his reasonable requests for accommodations – which would have enabled him to perform all the essential functions of his job with no undue burden on the employer – were denied.  Further, Mallin not only refused to provide needed and reasonable accommodations, she retaliated against the plaintiff for making repeated requests for reasonable accommodations.

30.     The reason given for the plaintiff's termination was a pretext; the real reason for his termination was because of his disability and the employer's refusal to provide a reasonable accommodation.

**FIRST CAUSE OF ACTION**

31.     The plaintiff has a disability and thus is protected against discrimination under the ADA.

32.     The plaintiff was qualified for his position.

33. The plaintiff was able to perform his position with or without a reasonable accommodation.

34. Despite his qualifications, the plaintiff was terminated. The reasons given for discharge were a pretext.

35. The defendant terminated the plaintiff's employment and otherwise discriminated against and harassed him in the terms and conditions of his employment because of his disability.

36. At all ties relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

37. Further, the plaintiff was terminated in retaliation for raising issues regarding his requests for accommodations based on his disability.

38. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

**SECOND CAUSE OF ACTION**

39. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

40. The defendant terminated the plaintiff's employment, retaliated against him and otherwise discriminated against and harassed him in the terms and conditions of his employment because of his disability, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

        Respectfully submitted,

        */s/ Michael J. Bruzzese*

        Michael J. Bruzzese
        Pa. I.D. No. 63306
        2315 Koppers Building
        436 Seventh Avenue
        Pittsburgh, PA 15219
        (412) 281-8676
        Counsel for the plaintiff

Dated:  January 27, 2020